UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BRET HEALY,<br><br>  Plaintiff,<br><br>vs.<br><br>CHARLENE MILLER; PATRICK T. SMITH, OFFICIALLY AND INDIVIDUALLY; FIRST JUDICIAL CIRCUIT COURT, BRULE COUNTY SOUTH DAKOTA,<br><br>  Defendants. | 4:24-CV-04053-RAL<br><br><br>OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |

Plaintiff Bret Healy filed a Complaint in this case against Charlene Miller, the Clerk of Court for Brule County within South Dakota's First Judicial Circuit, in her official capacity;[1] Judge Patrick T. Smith, officially and individually; the First Judicial Circuit Court; and Brule County, South Dakota. Doc. 1. The Complaint invoked federal question jurisdiction under 28 U.S.C. § 1331 and alleged deprivation of civil rights under 42 U.S.C. § 1983 based on sanctions imposed on Healy in the state proceeding, In the Matter of the Dissolution of Healy Ranch, Inc., Brule County Civil File 23-58. Doc. 1 ¶¶ 4, 24. There are multiple motions pending in this case,

---

[1] Although Healy in his Brief in Opposition to Motion to Dismiss appears to believe he has sued Clerk Miller in her individual capacity, Doc. 14 at 4, the Complaint does not specify that suit is against her in her personal capacity, see Doc. 1 ¶ 2 (not specifying Clerk Miller is being sued in her individual capacity in the caption and merely identifying her as "an individual judicial official"). Because there is no clear indication that Miller was sued in her personal capacity, this Court interprets the Complaint to sue her in an official capacity only. See Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995) (requiring "that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities" and explaining that "neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient").

1

including a Motion to Dismiss and a Motion for Miscellaneous Relief by the First Judicial Circuit, Judge Smith, and Clerk Miller (the "State Court Defendants"), Docs. 8, 31, and a Motion to Dismiss by Brule County, Doc. 33. Healy has filed a Motion to Electronically File Documents, Doc. 16, Motion for Judicial Notice, Doc. 21, and Motion to Amend Resistance Brief Pending Motion for Continuance, Doc. 38.

## I. Procedural History and Related Facts

Healy's current claim before this Court relates to a state court case in Brule County within the First Judicial Circuit regarding the dissolution of Healy Ranch, Inc. Doc. 1, 1-1. Healy, through his then-attorney Tucker Volesky,[2] filed a motion to dismiss the action, arguing the court lacked jurisdiction over the dissolution. Doc. 1-2 at 1–2. Judge Patrick T. Smith, a defendant in this action, denied the motion to dismiss at a hearing in January 2024. Doc. 1-1 at 2. Judge Smith then entered an order for sanctions against Healy in the sum of $240,000 and against Volesky in the sum of $10,000 by written order in March 2024. Doc. 1 ¶ 8; see also Doc. 1-1. In the 35-page order, Judge Smith detailed Healy's long litigation history and the standard for sanctions in South Dakota before explaining that "Bret Healy has subjected the current parties, other family members, and past attorneys to numerous amounts of litigation with numerous arguments that erroneously claim ownership of certain land, and corporate stock." Doc. 1-1 at 31. Judge Smith then addressed the arguments made in the brief supporting the motion to dismiss—the impetus triggering the court's decision to order sanctions—and set the sanctions amount by reasoning that

> Past sanctions have had no effect on Bret Healy, despite totaling over $120,000.00. Mr. Volesky has not been deterred or counseled his client on the wisdom of

---

[2] Attorney Tucker Volesky represented Healy in the initial state court action and at the beginning of this federal action. On March 25, 2024—one week after Judge Smith's order regarding sanctions in the state action was entered—Volesky moved to withdraw. Doc. 10. This Court granted the motion on April 17, 2024. Doc. 15. Since then, Healy has proceeded pro se and unsuccessfully attempted to find counsel. See Doc. 38 at 2.

2

> purs[u]ing frivolous actions. It is the intent of this Court to impress upon Mr. Healy that his actions have consequences and should not continue, and the finding of this Court that the doubling of his past sanctions will do so. It is the ORDER of the Court that Bret Healy be sanctioned in the amount of $240,000.00 for violating SDCL 15-6-11(b)(1). This is a substantial amount, but not unwarranted.

Doc. 1-1 at 35.

Upset with the sanctions, which are undoubtedly "substantial," Healy filed this action in federal court, alleging, among other things, deprivation of rights; violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments; and various errors in the state court proceeding, including arguments that Judge Smith lacked jurisdiction and improperly relied on prior cases to which Healy was a party. Healy asks this Court to void and enjoin enforcement of the state-court order.

The State Court Defendants move to dismiss based on the Rooker-Feldman doctrine, the Younger abstention doctrine, Eleventh Amendment and judicial immunity, and the plain language of 42 U.S.C. § 1983. Doc. 8. Brule County moves to dismiss under the Rooker-Feldman and Younger abstention doctrines, and for failure to state a claim. Doc. 33. Because this Court lacks jurisdiction under Rooker-Feldman and the State Court Defendants have Eleventh Amendment and judicial immunity, this Court grants dismissal. Moreover, Healy has failed to state a claim against Brule County, and Younger abstention principles apply as well.

**II. Analysis**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. Such a challenge can be either facial or factual in nature. Moss v. United States, 895 F.3d 1091, 1097 (8th Cir. 2018); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the court generally "restricts

3

itself to the face of the pleadings," Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6), but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (internal quotations and citation omitted); see also Jones, 727 F.3d at 846 (acknowledging "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)" (citation omitted)).

In contrast, where a factual attack is made on the court's subject-matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (citation omitted); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction[,] . . . the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation omitted). Therefore, in deciding a factual challenge to subject matter jurisdiction, the court need not view the evidence in the light most favorable to the non-moving party. See id. at 729 n.6, 730.

The challenge to subject matter jurisdiction in this case has facial and factual dimensions. Plaintiff's Complaint references and includes Judge Smith's cover email and the sanctions order from the state lawsuit, In the Matter of the Dissolution of Healy Ranch, Inc., Brule County Civil

4

File 23-58, so this Court can refer to that email and decision when determining whether the challenge is facial or factual.

"[F]ederal courts are courts of limited jurisdiction." United States v. Afremov, 611 F.3d 970, 975 (8th Cir. 2010). This Court "has a special obligation to consider whether it has subject matter jurisdiction in every case." Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011). "This obligation includes the concomitant responsibility to consider *sua sponte* the Court's subject matter jurisdiction where the Court believes that jurisdiction may be lacking." Id. (cleaned up) (quoting Clark v. Baka, 593 F.3d 712, 714 (8th Cir. 2010) (per curiam)).

Under 28 U.S.C. § 1331, federal district courts have jurisdiction over cases arising out of federal law, including federal statutes and the United States Constitution. Cagle v. NHC Healthcare-Maryland Heights, LLC, 78 F.4th 1061, 1066 (8th Cir. 2023). Healy invokes federal question jurisdiction under 28 U.S.C. § 1331 by alleging a deprivation of rights under 42 U.S.C. § 1983, which would ordinarily confer subject matter jurisdiction on this Court. However, alleging federal question jurisdiction is not always enough to establish a court's power to hear a case because other bars to jurisdiction may exist. See, e.g., Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923) (describing a district court's lack of appellate jurisdiction over state-court rulings); Dist. of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462 (1983) (same). Defendants argue that the Rooker-Feldman doctrine bars jurisdiction over this action.

### A. Rooker-Feldman Doctrine

The Rooker-Feldman doctrine takes its name from two decisions of the Supreme Court of the United States: Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923), and Dist. of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462 (1983). The doctrine holds that "'only the United States Supreme Court has been given jurisdiction to review a state-court decision,' so federal district

courts generally lack subject-matter jurisdiction over 'attempted appeals from a state-court judgment.'" Friends of Lake View Sch. Dist. 25 v. Beebe, 578 F.3d 753, 758 (8th Cir. 2009) (quoting 18B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4469 (2d ed. 2002)). The Rooker-Feldman doctrine applies not only to direct appeals, but also to federal actions alleging "general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court." Lemonds v. St. Louis Cnty., 222 F.3d 488, 492–93 (8th Cir. 2000) (quoting Feldman, 460 U.S. at 482 n.16); see also Prince v. Ark. Bd. of Exam'rs in Psych., 380 F.3d 337, 341 (8th Cir. 2004) ("Once a party has litigated in state court . . . he 'cannot circumvent Rooker-Feldman by recasting his or her lawsuit as a [section] 1983 action.'" (quoting Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997) (second alteration in original))). The state and federal constitutional claims are "inextricably intertwined" if the federal claim succeeds only upon a determination that the state court wrongly decided the issue before it. Lemonds, 222 F.3d at 493.

The Eighth Circuit uses a four-part test to determine whether a federal action violates Rooker-Feldman: (1) plaintiff must have lost in state court, (2) plaintiff complains of injury arising from the state court judgment, (3) the action invites the district court to review and reject the state court ruling, and (4) the state court decision was rendered prior to the federal court action. Fochtman v. Hendren Plastics, Inc., 47 F.4th 638, 643 (8th Cir. 2022) (explaining the circumstances in which the doctrine applies); Christ's Household of Faith v. Ramsey Cnty., 618 F. Supp. 2d 1040, 1044 (D. Minn. 2009) (numbering the doctrine as a four-part test); see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The elements of the Rooker-Feldman doctrine apply to Healy's claim. First, Healy lost in In the Matter of the Dissolution of Healy Ranch, Inc., Brule County Civil File 23-58, when the First Judicial Circuit denied his motion to dismiss and ordered $240,000 in sanctions against him.

Second, Healy directly complains of injuries arising from the denied motion to dismiss and order for sanctions. Healy specifically alleges, among other things, that Judge Smith's order is "unconstitutional" and "violates Plaintiff's clearly established constitutional rights" under the Fourth, Fifth, Eighth, and Fourteenth Amendments; "was arbitrary and conscience shocking"; relied on improper cases, such as a non-final decision and decisions "cantilevered by fabricated evidence"; and "will result in irreparable harm and actual prejudice." Doc. 1 ¶¶ 23–38. The Complaint further alleges that, "[a]s a result of the actions and/or threatened actions of Defendants Miller, Smith, the First Judicial Circuit Court, and Brule County, South Dakota, Plaintiff has suffered and/or will suffer deprivations of constitutional rights." Doc. 1 ¶ 39. Very clearly, the injuries alleged—the constitutional deprivations—arise from the actions the defendants took in issuing the state-court order.

Third, the requested relief invites this Court to "review and reject" the prior state-court order in violation of the Rooker-Feldman doctrine. See Fochtman, 47 F.4th at 643; Exxon Mobil, 544 U.S. at 284. To remedy the unconstitutional conduct he allegedly suffered, Healy asks this Court for "[p]rospective declaratory relief voiding Judge Smith's orders" and "[p]ermanent injunctive relief enjoining the enforcement of Judge Smith's orders." Doc. 1 ¶¶ A–B. Granting the requested relief would require this Court to determine whether the sanctions violate Healy's constitutional rights, which would necessitate review of the underlying motion to dismiss, its merits, and the appropriateness of the sanctions in light of that motion and Healy's prior litigation. Healy wants this Court to reject Judge Smith's order for sanctions as improper based on that

review. The requested relief thus invites this Court to "review and reject" the state-court order for sanctions, satisfying the third element to apply the Rooker-Feldman doctrine. See Fochtman, 47 F.4th at 643; Exxon Mobil, 544 U.S. at 284.

The fourth and final requirement for the Rooker-Feldman doctrine to apply is that the state court order was rendered before Healy initiated the present action. Healy received a courtesy copy of the opinion, approved for signature, on March 15, 2024. His complaint filed on March 18— three days later—directly challenges the order and its content. Healy argues that the order was not rendered first because he filed the Complaint in this action at 5:05 p.m. on March 18, 2024, and the signed version of the sanctions order was not filed in In the Matter of the Dissolution of Healy Ranch, Inc., until 6:10 p.m. that same day. Healy's argument is creative, but glosses over what plainly occurred. As Exhibit A to Healy's Complaint shows, on Friday, March 15, 2024, Judge Smith sent an email to the Brule County Clerk of Court and counsel at 5:00:18 p.m., which read:

> Please find attached a courtesy copy of the decision in the pending OTSC in the above referenced matter [Dissolution of Healy Ranch, Inc. 07CIV23-58]. Clerk please input into Odyssey [the state court filing system] for my digital signature and once signed be sure an attested copy is disseminated to all parties.

Doc. 1-1 at 1. The email attached the final decision for the clerk to attach Judge Smith's digital signature and to file. Judge Smith, as the address on his email reflects, has chambers in Mitchell, while the Brule County Clerk of Court is located in Chamberlain. The Brule County Clerk of Court delayed in filing the signed version of order until 6:10 p.m. on Monday, March 18, but the signed order is identical to the courtesy copy of the decision, except for attachment of Judge Smith's digital signature. Healy's Complaint recognizes that Judge Smith rendered his decision prior to the Complaint's filing by using the past-tense and stating that "[o]n or about March 15, 2024, Judge Smith issued a decision . . . ordering Bret Healy . . . to pay monetary fines as sanctions." Doc. 1 ¶ 8. Healy's Complaint attaches the courtesy copy and cover email as "Judge

8

Smith's Memorandum Decision on Rule 11 Sanctions." Doc. 1 ¶ 9; Doc. 1-1. Healy's Complaint challenges, attempts to void and prevent enforcement of, and is wholly based on the sanctions order. Without the sanctions order, which serves as the factual basis for this entire action, Healy would have no such claim to bring before this Court.

Accordingly, the Rooker-Feldman doctrine applies to Healy's claim. This Court lacks subject matter jurisdiction over the action and must dismiss it.

### B. Judicial and Eleventh Amendment Immunity of State Court Defendants

Healy has alleged that the State Court Defendants have all "caus[ed] deprivations of [Healy's] rights, privileges and immunities" under federal law and the Constitution. Doc. 1 ¶ 24. These defendants have moved to dismiss under judicial and Eleventh Amendment Immunity. Doc. 8; Doc. 9. Even if the Rooker-Feldman doctrine did not apply, dismissal would be appropriate on immunity grounds for the claims against the State Court Defendants.

Judicial immunity applies to Healy's claim against Judge Smith in his individual capacity. Judicial immunity means a "judge is immune from suit, including suits brought under section 1983 to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances." Schottel v. Young, 687 F.3d 370, 373 (8th Cir. 2012). The two circumstances where judicial immunity does not apply are when the alleged actions are "not taken in the judge's judicial capacity" or were "taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11–12 (1991). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity," Schottel, 687 F.3d at 374 (citing Birch v. Mazander, 678 F.2d 754, 756 (8th Cir. 1982)), and immunity applies even if the "action [the judge] took was in error . . . or was in excess of his authority," Mireles, 502 U.S. at 13 (citation omitted). Here, Judge Smith was clearly acting in his judicial capacity when he issued

9

the order for sanctions in the dissolution proceeding because issuing orders and regulating proceedings are actions "normally performed by a judge." He also did not act "in the complete absence of all jurisdiction" because SDCL § 47-1A-1430(4) authorizes the dissolution proceeding and SDCL § 15-6-11(c)(1)(B) authorizes a judge to issue sanctions.

Healy argues that judicial immunity does not bar his claim because he requests "[p]rospective declaratory relief voiding Judge Smith's orders" and "[p]ermanent injunctive relief." Judicial immunity "does not shield judges from claims for prospective declaratory" or prospective injunctive relief. Just. Network Inc. v. Craighead Cnty., 931 F.3d 753, 763–64 (8th Cir. 2019). Healy inaccurately characterizes the relief he seeks as "prospective." There is nothing "prospective" about "voiding" an order issued in a proceeding. See id. at 764 (quoting Davis v. Campbell, No. 3:13-cv-0693, 2014 U.S. Dist. LEXIS 7540, at *9 (N.D.N.Y. Jan. 22, 2014) ("The doctrine of judicial immunity also does not shield judges from claims for prospective declaratory relief. In this case, plaintiff's request for declaratory relief is purely retrospective. She seeks a declaratory judgment that past actions that occurred in the context of the Family Court proceedings violated her constitutional rights.")). Judicial immunity bars Healy's claim against Judge Smith in his individual capacity.

Eleventh Amendment immunity also applies to Healy's claims against the First Judicial Circuit Court and against Judge Smith and Charlene Miller in their official capacities. The Eleventh Amendment limits federal jurisdiction, such that it does not "extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

The Eleventh Amendment bars suit against a state or state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. Cory v. White, 457

10

U.S. 85, 90–91 (1982). Eleventh Amendment immunity applies to suits against the judiciary of a state. See Denke v. S.D. Dep't of Soc. Servs., 829 F.2d 688, 689 (8th Cir. 1987) (recognizing the Eleventh Amendment bar suits "against the state or one of its agencies"); S.D. Const. art. II ("The powers of the government of the state are divided into three distinct departments, the legislative, executive and judicial; and the powers and duties of each are prescribed by this Constitution."); S.D. Const. art. V, § 1 ("The judicial power of the state is vested in a unified judicial system consisting of a Supreme Court, circuit courts of general jurisdiction and courts of limited original jurisdiction as established by the Legislature."). Circuit courts are part of South Dakota's state judiciary; they were authorized by the South Dakota Constitution, S.D. Const. art. V, § 1, and created by state legislature, see SDCL § 16-5-1.2. Thus, Healy's § 1983 claims against the First Judicial Circuit Court are barred by the Eleventh Amendment.

Suits against state actors, including judges and the clerk of courts, in their official capacities also constitute actions against the state that are barred by the Eleventh Amendment. See Kruger v. Nebraska, 820 F.3d 295, 301 (8th Cir. 2016) ("[C]laims against state officials in their official capacities are really suits against the state . . . ." (citations omitted)). Therefore, the claims against Judge Smith and Clerk Miller in their official capacities are actions against the state, and the Eleventh Amendment bars such claims.

Similar to why he believes judicial immunity does not apply, Healy asserts that Ex parte Young, 209 U.S. 123 (1908), creates an exception to immunity that permits his suit against Judge Smith and Clerk Miller to proceed. Under Ex parte Young, "state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, [though] the same doctrine does not extend to states or state agencies." Monroe v. Ark. State Univ., 495 F.3d 591, 594 (8th Cir. 2007). Healy argues that, because he requests "[p]rospective

declaratory relief voiding Judge Smith's orders" and "[p]ermanent injunctive relief enjoining the enforcement of Judge Smith's orders," his claims would not violate the Eleventh Amendment. Despite this argument, and as already mentioned, Healy is not truly seeking "prospective injunctive relief" within the scope of Ex parte Young. See Guggenberger v. Minnesota, 198 F. Supp. 3d 973, 998 (D. Minn. 2016) ("[A] court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective to determine whether Ex parte Young applies." (cleaned up) (citing Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002))). Instead, Healy is asking this Court to void an issued state-court order that allegedly violates the Constitution. Retrospective relief denominated as "prospective" does not overcome Eleventh Amendment immunity, and Healy's claims are barred.

### C. Failure to State a Claim Against Brule County

Even if Rooker-Feldman did not apply to the claim against Brule County, dismissal would still be proper as to Brule County because Healy has failed to state a claim. See Fed. R. Civ. P. 12(b)(6); see also Docs. 33, 34 at 4–7. Brule County argues that "Healy's complaint fails to allege any conduct by Brule County or a Brule County official that would violate the Constitution, and no facts that the general violations alleged in the complaint arose from an official policy or custom of Brule County." Doc. 34 at 4. Brule County is entitled to dismissal under both arguments.

First, to survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Healy does not allege that Brule County took any specific actions related to his alleged constitutional deprivations. See Doc. 1. To the extent the complaint identifies any specific unconstitutional conduct, those actions were done by judicial employees and not by other individuals associated with Brule County. See Doc. 1 ¶¶ 2 (noting that Miller is a "judicial official" that "has been directed by Judge Smith to formalize his [sanctions] order"), 3 (alleging Judge Smith is a "judicial official"), 25–38 (alleging that Judge Smith's conduct and orders in the dissolution proceeding violated Healy's constitutional rights); SDCL Chapter 7-7 (identifying county officials, which does not include the state courts, judges, or clerk of courts within a county). Therefore, Healy has not adequately pleaded that he would be entitled to relief for any action of Brule County related to the dissolution proceedings or sanctions order.

Second, even if the challenged actions could be attributed to Brule County, Healy has failed to allege sufficient facts for relief against the county. Under 42 U.S.C. § 1983, a municipality or local government, such as a county, "may be liable . . . if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." Connick v. Thompson, 563 U.S. 51, 60 (2011) (cleaned up and citation omitted); see also L.A. Cnty. v. Humphries, 562 U.S. 29, 32–33 (2010) (noting in a Monell analysis that a "county is a municipal entity"). "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." Connick, 563 U.S. at 60 (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Healy does not allege that Brule County has unconstitutional policies or customs; thus, Healy has failed to state a claim against Brule County.

13

### D. <u>Younger</u> Abstention

Even if this Court had jurisdiction, it would decline to exercise it under the abstention rule set forth in <u>Younger v. Harris</u>, 401 U.S. 37 (1971). Under the <u>Younger</u> abstention doctrine, principles of "comity and federalism require federal courts to abstain from interfering with pending state court criminal proceedings." <u>Wassef v. Tibben</u>, 68 F.4th 1083, 1086 (8th Cir. 2023). <u>Younger</u> abstention initially applied only to criminal proceedings but has since extended to "certain civil enforcement proceedings" and "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." <u>Sprint Commc'ns, Inc. v. Jacobs</u>, 571 U.S. 69, 78 (2013) (cleaned up) (quoting <u>New Orleans Pub. Serv., Inc. v. Council of New Orleans</u>, 491 U.S. 350, 368 (1989) ("<u>NOPSI</u>")). When a <u>NOPSI/Sprint</u> situation arises, the court abstains from exercising jurisdiction when there is "(1) an ongoing state judicial proceeding that (2) implicates important state interests and (3) provides the federal plaintiff adequate opportunity to raise federal challenges"—the three <u>Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423 (1982), factors—and "(4) does not involve an 'extraordinary circumstance' counseling against abstention." <u>Wassef</u>, 68 F.4th at 1087.

In the Eighth Circuit, courts conduct the <u>Younger</u> abstention analysis as a three-part inquiry:

> First, does the underlying state proceeding fall within one of the three "exceptional circumstances" where <u>Younger</u> abstention is appropriate [under <u>NOPSI</u> and <u>Sprint</u>]? Second, if the underlying proceeding fits within a <u>Younger</u> category, does the state proceeding satisfy what are known as the "<u>Middlesex</u>" factors? And third, even if the underlying state proceeding satisfies the first two inquiries, is abstention nevertheless inappropriate because an exception to abstention applies?

<u>Id.</u> at 1087 (quoting <u>375 Slane Chapel Rd., LLC v. Stone Cnty., Missouri</u>, 53 F.4th 1122, 1127 (8th Cir. 2022)).

1. **NOPSI and Sprint Category**

Younger abstention only applies to preclude federal intrusion into "ongoing state criminal prosecutions," "certain civil enforcement proceedings," and "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint, 571 U.S. at 78 (cleaned up) (quoting NOPSI, 491 U.S. at 368). The third category of cases to which Younger applies is not present when the proceeding merely involves enforcing orders and judgments generally; rather, Younger only applies to those proceedings with orders inherently related to court functions. See 375 Slane Chapel Rd., 53 F.4th at 1128–29 (emphasizing that the third NOPSI category has "narrow parameters" and is not "triggered simply because the . . . proceeding involves a quintessentially state-law matter").

The allegedly unconstitutional order for sanctions in this case was not issued in a criminal prosecution or a civil enforcement proceeding; it is outside the first and second NOPSI categories. The claim does, however, meet the requirements for the third NOPSI category because a state-court sanctions order for repeated frivolous litigation practices is an "order[] uniquely in furtherance of the state courts' ability to perform their judicial functions." Under South Dakota Codified Law § 15-6-11, which is South Dakota's Rule 11 analogue, the state court has the power to issue sanctions on its own initiative for improper conduct. SDCL § 15-6-11(c)(1)(B). South Dakota allows issuing sanctions to regulate and control attorneys and parties appearing in cases before them because it preserves the court's "inherent power to regulate trial procedure." State v. Guthrie, 631 N.W.2d 190, 194–95 (S.D. 2001) (acknowledging the court's power to "regulate trial procedure" and applying that rule to determine "a trial court has the inherent power to fashion an appropriate sanction for discovery violations in criminal cases"); see also Tri-State Refining & Inv. Co. v. Apaloosa Co., 431 N.W.2d 311, 315–16 (S.D. 1988) (affirming a monetary "penalty"

sanction for "obvious bad faith and intent to harass"). Thus, the sanction order in this case is "uniquely in furtherance of the state courts' ability to perform their judicial functions," Sprint, 571 U.S. at 78 (cleaned up) (quoting NOPSI, 491 U.S. at 368), and places this action in the third NOPSI category.

### 2. Middlesex Factors

The second stage of the Younger analysis under Eighth Circuit precedent addresses the Middlesex factors. Wassef, 68 F.4th at 1087 (cleaned up and citation omitted). "Under Middlesex, [the court] ask[s] whether the ongoing state proceeding (1) is judicial in nature, (2) implicates important state interests, and (3) provides an adequate opportunity to raise constitutional challenges." Id. (cleaned up and citation omitted). This action meets all three requirements.

First, the dissolution proceeding was ongoing at the time of filing the complaint in this action.[3] See Tony Alamo Christian Ministries v. Selig, 664 F.3d 1245, 1250 (8th Cir. 2012) ("For purposes of applying Younger abstention, the relevant time for determining if there are ongoing state proceedings is when the federal complaint is filed."). But see id. at 1250 n.3. The ongoing proceeding is also judicial in nature because it is a state-court dissolution proceeding under SDCL § 47-1A-1430(4), which authorizes the circuit court to dissolve a corporation "[i]n a proceeding by the corporation to have its voluntary dissolution continued under court supervision." Doc. 1-1 at 3; SDCL § 47-1A-1430(4).

---

[3] Healy asserts that the proper inquiry is whether the sanctions order—and not the dissolution proceeding—is still ongoing. He cites to no law supporting this position, and the limited authority on the matter counsels otherwise. See Berg v. Berg, 19-cv-2676, 2020 U.S. Dist. LEXIS 15514, at *14 (D. Minn. Jan. 30, 2020) (declining review of constitutional challenges to a contempt and sanction order under Younger after noting that the marriage dissolution proceeding in which the sanctions order was issued was still ongoing).

16

Second, the proceeding implicates important state interests. The sanctions order was issued in the dissolution proceeding to address Healy's conduct, filings, and arguments in that proceeding, and the state has an interest in regulating parties and proceedings before it. See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 12–13 (1987) (acknowledging a state's interest "in the contempt process, through which it vindicates the regular operation of it judicial system," as an important interest (cleaned up and citation omitted)); Guthrie, 631 N.W.2d at 194–95. The second Middlesex factor is, therefore, satisfied.

Finally, Healy has adequate opportunity to raise his substantive and procedural constitutional challenges to the sanction order in state court on a motion for reconsideration and on appeal. See SDCL § 15-6-11(e) (authorizing appeals to the Supreme Court of South Dakota from sanction orders and stating that review will be "without any presumption of the correctness of the trial court's findings of fact and conclusions of law"); see also Ferebee v. Hobart, 776 N.W.2d 58 (S.D. 2009) (South Dakota Supreme Court reviewing denial of a sanctions motion); Sazama v. State ex rel. Muilenberg, 729 N.W.2d 335, 344–45 (S.D. 2007) (South Dakota Supreme Court addressing a constitutional due process challenge to a sanctions order in a contempt proceeding); Wassef, 68 F.4th at 1089 ("A constitutional attack on state procedures does not establish the inadequacy of those procedures for Younger abstention purposes." (citing Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 628 (1986))). Because the state court can review constitutional claims on a motion for reconsideration and the Supreme Court of South Dakota can address all of Healy's arguments about the impropriety of the sanctions order on appeal, the third Middlesex factor is met.

17

### 3. Abstention Exception

The final step of the Younger abstention analysis asks whether "abstention [is] nevertheless inappropriate because an exception to abstention applies." Wassef, 68 F.4th at 1087 (cleaned up and citation omitted). Abstention may be inappropriate where there is a "showing of bad faith, harassment, or some other extraordinary circumstance." Middlesex, 457 U.S. at 435. Courts also should not abstain "where a state statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'" Plouffe v. Ligon, 606 F.3d 890, 893 (8th Cir. 2010) (quoting Trainor v. Hernandez, 431 U.S. 434, 447 (1977)).

Healy argues that the order imposing sanctions, and the alleged constitutional violations arising thereunder, are "extraordinary" circumstances in the record that "creat[e] a need for immediate federal equitable relief." Doc. 14 at 7. Although constitutional violations are significant matters, Healy points to nothing that distinguishes this case from any other case alleging a constitutional deprivation; the record does not support Healy's belief that his grievances are "exceptional." A state court imposing sanctions after issuing an order to show cause, Doc. 1-3 at 1–3; reviewing briefing, Doc. 1-3 at 4–7, 43–62, and hearing argument on the matter, see Doc. 1-4; and citing statutory authorization to issue sanctions, Doc. 1-1, does not constitute a "showing of bad faith, harassment," or the application of a "flagrantly and patently" unconstitutional statute. There is no reason for this Court to interfere with the state proceeding rather than abstain under Younger.

### III. Conclusion

For the reasons explained, it is therefore

ORDERED that the Defendants' motions to dismiss, Docs. 8 and 33, are granted. It is further

ORDERED that the remaining motions, Docs. 16, 21, 31, and 38, are denied as moot.

DATED this 14th day of August, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE